In the matter of the probate of the alleged will of THEODORE GADDIS, deceased.

[Submitted May term, 1924. Decided October 20th, 1924.]

1. Where the relations existing between a testator and his beneficiary were meretricious, no presumption of undue influence is raised from this fact alone.

2. The existence of such meretricious relations does not shift the burden upon the beneficiary to take the stand in her own behalf for the purpose of disproving undue influence on her part.

3. The mere fact that the chief beneficiary was a mistress of the testator and possessed considerable influence over him does not raise the presumption that she exercised such influence in the making of his will.

On appeal from a decree of the prerogative court advised by Vice-Ordinary Foster.

*Mr. Abner Kalisch* and *Messrs. Kalisch & Kalisch,* for the proponent-appellant.

*Messrs. Heine, Bradner & Laird* and *Mr. M. Casewell Heine,* for the caveators-respondents.

The opinion of the court was delivered by

KAYS, J.

This is an appeal from a decree of the prerogative court refusing the probate of a paper-writing purporting to be the

last will and testament of Theodore Gaddis, who died February 8th, 1922.

The deceased by his said will left all his property to a friend, Alice Cox, and named her sole executrix. Certain of the nephews and nieces of the decedent filed *caveats* against the probating of the will, and the orphans court of Essex county, with Judge Flannagan sitting, after taking considerable testimony, refused the probating of the same on the ground that the will was the result of undue influence exercised by Miss Cox, the beneficiary and executrix. Upon appeal to the prerogative court, Vice-Chancellor Foster, sitting as vice-ordinary, affirmed the decree of the orphans court.

The testimony discloses the following facts in the case:

Theodore Gaddis, who at one time was a prosperous business man, had business reverses, and failed about the latter part of 1918. After his failure Mr. Gaddis' and his wife lived with Mrs. and Mr. Eppele. Mrs. Eppele was a niece of Mr. Gaddis. Prior to Mr. Gaddis' failure he had in his employ a young woman by the name of Alice Cox, and after the death of Mrs. Gaddis, which occurred in the May following his failure, he left the home of his niece, Mrs. Eppele, and went to live at the home of Miss Cox, in Newark, New Jersey. It seems to be conceded by counsel for Miss Cox that the relations of the testator and Miss Cox were meretricious, and that such relations had existed between them prior to the death of Mrs. Gaddis. It appears that Miss Cox took care of Mr. Gaddis at her home and also attended him at the hospital during his last sickness. It may be said from the testimony that Miss Cox possessed considerable influence over Mr. Gaddis during the time which such meretricious relations relations continued and existed. There is nothing to show that Mr. Gaddis did not go to live at her home except by his own choice.

We are of the opinion that there is nothing disclosed by the testimony which will justify the conclusion that Miss Cox exerted unduly her influence over Mr. Gaddis in the making of this will. We cannot reach the conclusion that

Miss Cox, rather than Mr. Gaddis, occupied the dominant position, which would shift the burden upon her to prove the absence of such undue influence. It may be that her failure to be sworn was induced by the fact that she did not wish to disclose her intimate relations with Mr. Gaddis. However, such proof was not necessary unless the evidence disclosed that she. influenced the testator directly in 'procuring a will in her favor. This court held in the *Middleton Case, 68 N. J. Eq. 798,* ·affirming a decision of Vice-Ordinary Bergen, the mere fact that a testator made his mistress the chief beneficiary of his will, raises no presumption that she had secured an influence over him which she would, naturally, improperly exert to advance her own interest. The testi-- mony of Mr. Werner, the attorney who drew the will in this case, discloses that he was alone in the room at the hospital with the testator when Mr. Gaddis told him how he wished to dispose' of· his property, and that he thereupon drew the will without leaving the room. The evidence of the doctor who attended Mr. Gaddis discloses that he was of sound mind.

It seems to us that the will was a natural one, which would follow as a result of the relations existing between the testator and beneficiary. The testator realized the obligations which he owed to Miss Cox resulting from the intimate relations which existed between them, and for the care which she had and was giving him. The mere possession of influence by Miss Cox, and the opportunity and motive to exert it upon the testator, does not establish the existence of such undue influence in the making of the will by Mr. Gaddis. There is no evidence which shows that the testator was dominated and coerced by Miss Cox in disposing of his property. The fact that the relations between the testator and Miss Cox existed in violation of law, or that such relations were immoral, is not sufficient ground for invalidating the will.

It seems to us, therefore, that the burden was not shifted upon Miss Cox to disprove undue influence on her part; nor does it seem that her influence, whether powerful or slight, was exercised to destroy the free agency of the testator; nor that Miss Cox, rather than Mr. Gaddis, occupied the dominant position.

The probate of the will, therefore, was improperly denied. The decree of the prerogative court will be reversed, with costs.

*For affirmance*—PARKER, KATZENBACH, LLOYD, WHITE —4.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, CAMPBELL, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS—11.